**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br>GEO GROUP, INC;<br>MARK MELHORN; *and*<br>M. KOEGLER,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:25-CV-266<br><br>District Judge Stephanie L. Haines<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF Nos. 32 and 43 |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

Plaintiff, Jane Doe ("Plaintiff") brings this action arising out of prolonged sexual abuse by a chaplain at the Moshannon Valley Processing Center ("MVPC") while she was in immigration custody. She brings two claims of negligence against the United States of America ("the Government') under the Federal Torts Claims Act ("FTCA"), state law claims of assault and battery, intentional infliction of emotional distress, false imprisonment, intrusion upon seclusion, and negligence against the chaplain and the private prison provider Geo Secure Services, LLC ("GEO"), two counts of negligence against the person charged with the duty to investigate the abuse and against GEO, negligent supervision, hiring and retention against GEO, and a claim of violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(a) against the chaplain, investigator, and GEO (collectively, the "GEO Defendants").

Presently pending is one motion to dismiss and one motion to dismiss and motion to strike. For the reasons stated herein it is respectfully recommended that the Court deny the Motion to

Dismiss and Motion to Strike filed by the GEO Defendants. ECF No. 32. It is further recommended that the Court deny the Motion to Dismiss filed by the Government. ECF No. 43.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2025, Plaintiff initiated this counseled federal action, and subsequently filed an Amended Complaint, the operative pleading. ECF No. 22. The Amended Complaint sets forth substantial detailed allegations. In the Amended Complaint, Plaintiff alleges that while in immigration custody at the MVPC, defendant Mark Melhorn ("Melhorn"), chaplain, engaged in a prolonged and persistent campaign of sexual harassment and abuse directed at Plaintiff. Id. ¶ 5. Melhorn's sexual misconduct directed at female employees and detainees was known by the Government, GEO, and their officers. Id. ¶ 2. Plaintiff also names M. Koegler, the MVPC Prison Rape Elimination Act ("PREA") coordinator, as a defendant. Id. ¶ 19.

The U.S. Immigration and Customs Enforcement ("ICE") directives set forth mandatory obligations regarding detention in the Performance Based National Detention Standards 2011 ("PBNDS"). Id. ¶ 23; ECF No. 44-1 at 1, 6, 8, 10-12, 14, 29, 36-37, 49, 64. The contract held by GEO to detain noncitizens incorporated various binding regulations and standards, including the PBNDS. ECF No. 22 ¶ 24; ECF No. 44-2 at 1 (incorporating by reference the IGSA between ICE and Clearfield County). PBNDS includes extensive mandatory responsibilities placed upon both ICE and GEO deriving from the PREA. ECF No. 22 ¶ 26; ECF No. 44-1 at 10 ("The Service provider shall also comply with the requirements of Subpart A of the [DHS PREA regulations]."). PREA was enacted by Congress to eradicate rape and sexual abuse in detention facilities. ECF No. 22 ¶ 26. Under binding regulations, ICE is committed to a zero-tolerance standard for sexual abuse in detention facilities and to robust oversight of detention centers. Id. ¶ 27; 6 C.F.R. § 115.11(a)

("The agency shall have a written policy mandating zero tolerance toward all forms of sexual abuse and outlining the agency's approach to preventing, detecting, and responding to such conduct."); 6 C.F.R. §§ 115.12-115.95; ECF No. 44-1 at 37-38 (Zero Tolerance for Sexual Harassment, Abuse, and Assault). These regulations impose numerous requirements regarding response to complaints of sexual abuse, including prompt investigations, availability of interpretation services, resources for victims (including information about U nonimmigrant status for victims of crime),[1] reporting to ICE all abuse allegations, reporting to ICE when any detainee is segregated due to sexual abuse, and immediate action to protect detainees when at risk of imminent sexual abuse, ECF No. 22 ¶ 29, and also mandate that ICE ensure the proper investigation of all reported incidents, including in facilities operated by contractors like GEO. Id. ¶ 30.

In August 2022, DHS Office of Civil Rights and Civil Liberties ("CRCL") conducted a "spot-check" at MVPC and then advised ICE that GEO and MVPC were in violation of multiple mandatory requirements regarding sexual assault from the PBNDS and other directives. Id. ¶¶ 31-33, 38; ECF No. 50-1 (DHS CRCL, Key Civil Rights Findings and Recommendations Spot-Check at Moshannon Valley Processing Center: Complaint No. 003761-22-ICE) at 1, 4-5 (Nov. 8, 2022) (CRCL 2022 MVPC Report). These violations included: failure to conduct investigative interviews as required, failure to provide interpretive services, failure to educate women about the zero-tolerance policy for sexual abuse, and failure to educate women about reporting and investigation procedures, and multiple blind spots on the MVPC surveillance camera system footage, and failure gather evidence. ECF No. 22 ¶¶ 36-37; ECF No. 50-2 (DHS CRCL, Summary of CRCL's Recommendations and ICE's Response Moshannon Valley Processing Center (June

---

[1] The U nonimmigrant status (U visa) is set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity. https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status

23, 2023)) which hampered efforts to investigate allegations. Id. ¶¶ 33-35; see generally ECF No. 50-1. ICE was also alerted to CRCL's finding that ICE had failed to sufficiently train facility staff responsible for PREA reporting and investigation, which had led to failures to interview witnesses, preserve footage, and gather evidence. Id. ¶¶ 36-37; ECF No. 50-2 (DHS CRCL, Summary of CRCL's Recommendations and ICE's Response Moshannon Valley Processing Center (June 23, 2023)).

In August 2023, ICE transferred Plaintiff to MVPC. ECF No. 22 ¶ 41. As a devoutly Christian woman, Plaintiff began to attend religious services and receive counseling from MVPC's chaplain Melhorn. Id. ¶¶ 42-48. Over the next year, Melhorn repeatedly sexually harassed and assaulted Plaintiff, including making sexualized comments and gestures, asking her if she "liked how she looked," staring at her breasts, and licking his lips while he stared at her. Id. ¶¶ 49-51. While Plaintiff sang in the choir, Melhorn would position himself so that he could stare at her from behind, moving to follow her if she moved. Id. ¶ 52. Melhorn touched Plaintiff inappropriately, including touching her inner thighs when handing her papers, stroking her hand when passing her a bible, and running his hands down the sides and back of her body when ostensibly praying for her. Id. ¶¶ 54-55, 60. Melhorn stood on his toes to watch Plaintiff behind a magnetic privacy screen while she showered, and Plaintiff was told that he was "regularly" watching her from outside her cell. Id. ¶¶ 57-58.

In March 2024, Melhorn entered Plaintiff's cell while she was sleeping and placed his hand under her sheets to touch her buttocks, breasts, and crotch. Id. ¶ 62. He warned her not to report him. Id. ¶¶ 63-64. In April 2024, Melhorn entered Plaintiff's cell under the pretext of giving her religious pamphlets where he cornered her in her bed, made sexually explicit comments to her, and touched her breasts, inner thighs, buttocks and vagina, and forced her to touch his erect penis.

Id. ¶¶ 66-69. He told her that other women "had tried to report him" but that no one had believed them and again warned her not to report him. Id. ¶ 72. Plaintiff suffered nightmares and trouble sleeping due to Melhorn's actions. Id. ¶¶ 78-79. In April 2024, she told a MVPC practitioner that Melhorn had sexually harassed and abused her. Id. ¶¶ 79-80.

When Plaintiff reported Melhorn's actions to the health care practitioner, she told Plaintiff that she was glad "because Melhorn had done things like this before." Id. ¶ 82. The practitioner initiated a PREA report based on Plaintiff's allegations. Id. A nurse who saw Plaintiff in connection with the PREA report told her that Melhorn was a "pervert" and that this was widely known at the facility. Id. ¶ 84. Another officer told Plaintiff that she had complained about Melhorn and was aware of another female employee who had also done so. Id. ¶ 91.

MVPC's PREA coordinator, Defendant Koegler, investigated, but the investigators did not use an interpreter, only asked a few questions with no follow-up questions, and did not provide Plaintiff with any resources for victims. Id. ¶¶ 85-87. The investigation concluded with a document stating that the PREA complaint was "unsubstantiated," and that the complaint was investigated by GEO and the Pennsylvania State Police. Id. ¶ 92. Plaintiff has no recollection of ever meeting with any police investigator. Id. ¶ 93. The complaint was deemed unsubstantiated in large part because the evidence was not captured by camera. Id. ¶¶ 86, 92, 95.

In July 2024, MVPC moved Plaintiff to the protective custody area of the medical unit. Id. ¶ 103. Melhorn found Plaintiff there, watched her while she used the bathroom, and then sang her name and asked "what she had done" to end up in protective custody. Id. ¶¶ 104-107. Plaintiff spoke with an ICE officer directly and reported this latest incident of voyeurism and abuse. Id. ¶ 113. The investigation that followed mirrored the first one in that it was conducted without an

interpreter, was short, had no follow up questions, and was deemed "unsubstantiated" due to a claimed lack of evidence. Id. ¶¶ 114-117.

Plaintiff was released in August 2024 after an attorney submitted a PREA complaint and release request on her behalf. Id. ¶¶ 119-120, 123.

Throughout the time she was detained, ICE knew or should have known about Melhorn's sexual misconduct, both generally and with Plaintiff, based on the complaints from employees, the notices of PREA investigations in April and July 2024, and the notices of transfer to protective custody. Id. ¶ 121. Despite this knowledge, ICE never undertook the actions mandated by DHS regulations, including imposition of remedial measures or providing Plaintiff with information about U nonimmigrant status for victims of crime. Id. ¶ 122.

On August 20, 2025, Plaintiff initiated this counseled federal action. On December 12, 2025, Defendants GEO, Melhorn and M. Koegler filed their Motion to Dismiss and Motion to Strike with Brief in Support. ECF Nos. 32, 33. Plaintiff filed her Response in Opposition on January 26, 2026. ECF No. 42.

On January 28, 2026, the Government filed a Motion to Dismiss with Brief in Support. ECF Nos. 43, 44. The Brief includes two attachments: 1) the IGSA between DHS ICE and Clearfield County as Service Provider dated September 28, 2024, ECF No. 44-1, and 2) the Services Contract between Clearfield County and GEO dated September 28, 2024, ECF No. 44-2. On February 20, 2026, Plaintiff filed her Response in Opposition, ECF No. 50, with two attachments: 1) CRCL 2022 MVPC Report, ECF No. 50-1 ("Exhibit A"), and 2) CRCL Summary of ICE Response, ECF No. 50-2 ("Exhibit B"). On March 6, 2026, the Government filed its Reply. ECF No. 51. On June 18, 2026, Plaintiff filed a Notice of Supplemental Authority in Support of her Opposition to Defendant United States' Motion to Dismiss. ECF No. 52.

The Motions to Dismiss are now ripe for consideration.

## B. STANDARD OF REVIEW

### 1. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

**2. Motions to Dismiss Pursuant to Fed. R. Civ. P 12(b)(1)**

A court must dismiss any claims over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions invoking Rule 12(b)(1) fall into two categories: facial or factual attacks. Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and [] requires the court to 'consider the allegations of the complaint as true.'" Id. (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." Const. Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).

**3. Matters Outside of the Pleadings**

When deciding a Rule 12(b)(6) motion to dismiss, a court typically does not consider matters outside of the pleadings. However, courts may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." McDonnell v. Avis Budget Car Rental, LLC, No. 1:25-CV-00061, 2026 WL 711383, at *2 (M.D. Pa. Mar. 13, 2026) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

**C. DISCUSSION**

**1. The GEO Defendants' Motion to Dismiss — ECF No. 32**

Although not styled as a partial motion, the following claims are subject to the pending Motion to Dismiss filed by the GEO Defendants: 1) Count V, in which Plaintiff alleges false

imprisonment against GEO and Melhorn; 2) Count VI, in which Plaintiff alleges intrusion upon seclusion against GEO and Melhorn; and 3) Count XI, in which Plaintiff alleges violation of the RFRA against all three GEO Defendants. The GEO Defendants further move to strike headings C, D, E, and F of the Amended Complaint on grounds they contain scandalous and impertinent matter, pursuant to Federal Rule of Civil Procedure 12(f).

**a. Motion to Dismiss Counts V, VI, and XI Pursuant to Fed. R. Civ. P. 12(b)(6)**

**i. False Imprisonment — Count V**

Plaintiff alleges in Count V that Melhorn, without legal cause and her consent, deprived her of her liberty by holding her in place in her cell while engaging in sexually abusive conduct, and that GEO is vicariously liable under the doctrine of *respondeat superior*. ECF No. 22 ¶¶ 142-144. She alleges that on or around April 8, 2024, Melhorn entered her cell and while she was sitting on the bottom of a two-level bunk bed, he placed himself in front of her, she felt trapped and believed she could not leave the cell because of the top bunk above her and the wall behind her. Id. ¶¶ 66, 67. While he stood in front of Plaintiff, Melhorn made sexually explicit comments. Id. at ¶ 68. He began to touch her, placing his hands on her breasts, her inner thighs, and her buttocks. Id. He then touched her vagina. Id. While he was doing so, he continued to stand in front of Plaintiff with his penis erect inside his pants at her eye level. Id. at ¶ 69. He then forced her to touch his erect penis. Id. This conduct only stopped after Plaintiff's cellmate returned to the cell. Id. at ¶ 70.

Defendants Melhorn and GEO move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that no case precedent supports an inmate or detainee's false imprisonment claim, citing an unpublished decision Rodriguez v. Oberlander, 301 A.3d 493 (Table) (Pa. Commw. 2023) and Kornegey v. City of Philadelphia, 299 F.Supp.3d 675, 682 (E.D. Pa. 2018),

and quoting it for the proposition that "[t]he Court is unaware of any cases in which a prisoner who was lawfully incarcerated was permitted to proceed with a false imprisonment claim under Pennsylvania law based on the conditions of his or her confinement." ECF No. 33 at 4. Upon review, the Court agrees with Plaintiff that the two cited cases are easily distinguished because the plaintiffs were challenging the detention conditions or lawfulness of a court order.

Under Pennsylvania law, an actor is liable for false imprisonment if: (1) he acts intending to confine a person within boundaries fixed by the actor; (2) his act directly or indirectly results in such confinement of that person, and (3) the person confined is conscious of the confinement or is harmed by it. Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998); Gagliardi v. Lynn, 285 A.2d 109, 111 n. 2 (Pa. 1971). Defendants argue that placing yourself in front of someone without any actions or words showing any type of detention or restraint is not detention, and that Plaintiff only "felt trapped" and was never actually trapped or detained for the few moments of the alleged acts. ECF No. 33 at 5.

Of course, Plaintiff has alleged more than this, and based on her allegations, the Court finds she has sufficiently alleged a claim for false imprisonment sufficient to allow this claim to proceed to discovery at this stage of the case. Under the law, should there have been an absence of force or physical barriers, her claim of false imprisonment could not rest upon a mere "belief" that she is confined. Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa.1982). Here, Plaintiff alleges she was restrained by the physical barrier of the bunkbed and the wall behind it, with Melhorn directly in front of her. This act directly or indirectly resulted in her confinement.

Defendants also argue that standing in front of someone is not unlawful, and that Plaintiff's detention at MVPC was a lawful detention. ECF No. 33 at 5. Defendants circular argument is not

well-taken. First, Plaintiff is not challenging the lawfulness of her detention. Second, the lawfulness of Melhorn's actions is at issue in this case.

Accordingly, it is respectfully recommended that the Motion to Dismiss be denied with respect to the false imprisonment claim alleged at Count V.

**ii. Intrusion Upon Seclusion — Count VI**

Next, Defendants Melhorn and GEO move to dismiss Count VI for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In this claim, Plaintiff alleges that Melhorn intentionally intruded upon Plaintiff's private living space while she was secluded therein and engaged in invasive conduct without her consent, and that Defendant GEO is vicariously liable for these actions under the doctrine of *respondeat superior*. ECF No. 22 ¶¶ 145-147.

To state a claim for intrusion upon seclusion under Pennsylvania law, a plaintiff must show that a defendant "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," and that "the intrusion would be highly offensive to a reasonable person." Cook v. GameStop, Inc., 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023), aff'd as modified, 148 F.4th 153 (3d Cir. 2025) (citing Popa v. Harriet Carter Gifts, Inc., 426 F. Supp. 3d 108, 120 (W.D. Pa. 2019)). For an invasion to give rise to an actionable claim for intrusion upon seclusion, it must be "of the sort which would cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Chicarella v. Passant, 494 A.2d 1109, 1114 (Pa. Super. 1985) (cleaned up). The Third Circuit has concluded "that an actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act" and emphasized that both the action and the intrusion must be intentional. O'Donnell v. U.S., 891 F.2d 1079, 1083 (3d Cir. 1989).

Defendants argue Plaintiff has failed to state a claim because she does not allege any facts to state that Defendants Melhorn or GEO invaded a space where the Plaintiff secluded herself, or overheard the Plaintiff's private affairs and intruded upon them, but simply alleges she was in her cell, which is not secluded, since Plaintiff had a cellmate and was on her shared bunk. ECF No. 33 at 6. Defendants further argue that immigration detention facilities, by their very nature, negate Plaintiff's seclusion, citing case law on the Fourth Amendment proscription against unreasonable searches and seizures wherein privacy is not always protected. Id. at 6-7. In response to this latter argument, Plaintiff notes that ICE detention standards require privacy when detainees are showering, using the restroom and changing clothing. ECF No. 42 at 10-11, n. 6 (citing National Detentions Standards 4.4(II)(G) (Revised), https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf. Plaintiff also notes, correctly, that immigration detention is civil in nature under these circumstances, and thus, the cases decided under Fourth Amendment jurisprudence are inapplicable. Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

The Court need not repeat, but nevertheless incorporates, the allegations summarized *supra*, with respect to the false imprisonment claim at Count V, concerning Melhorn's conduct in Plaintiff's cell when she was sitting on the bottom bunkbed. Plaintiff has also alleged an incident wherein she was shaving her pubic hair behind a privacy screen in her cell and then found Melhorn in the cell standing on his toes so that he could see her over the screen. Id. ¶ 57. In another instance, Melhorn entered Plaintiff's cell while she was sleeping, woke her up, and placed his hand under the sheets to touch her buttocks, breasts, and crotch. Id. ¶ 62. "[C]ourts have held that viewing an individual's private body parts without his or her consent can constitute an intrusion upon seclusion." Harris v. Midas, Civil Action No. 17-95, 2017 WL 3440693, at *4 (W.D. Pa. Aug. 10, 2017) (collecting cases); see also id. ("Here, Plaintiff alleges that Shick forced her into a chair,

pulled her shirt away from her body, looked at her breasts and commented on them. Taking these allegations as true, the Court finds that Plaintiff has adequately stated a claim for intrusion upon seclusion.")

Accordingly, it is respectfully recommended that the Motion to Dismiss be denied with respect to the intrusion upon seclusion claim stated in Count VI.

**iii. Religious Freedom Restoration Act — Count XI**

Plaintiff alleges violations of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 against all three GEO Defendants, alleging they were acting as instrumentalities of the United States in operating an immigration detention facility and, in that capacity, substantially burdened Plaintiff's exercise of religion through their actions and inactions. ECF No. 22 ¶¶ 158-159.

The parties are in agreement that to state a prima facie RFRA claim, a plaintiff "must allege that the government (1) substantially burdened (2) a sincere (3) religious exercise." Davis v. Wigen, 82 F.4th 204, 211 (3d Cir. 2023). See ECF No. 33 at 7; ECF No. 42 at 11. Likewise, they agree that a "'substantial burden' ' exists where 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.'" Hasbajrami v. Glogau, No. 1:20-CV-00084, 2022 WL 4652337, at *8 (W.D. Pa. Sept. 9, 2022), report and recommendation adopted, No. CV 20-84, 2022 WL 4609255 (W.D. Pa. Sept. 30, 2022) (citing Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007)). See ECF No. 33 at 7; ECF No. 42 at 11.

However, Defendants argue that Plaintiff has not alleged any intentional action or substantial burden on her exercise of religion, as they see the term "substantial" to be defined under

the case law. Defendants argue that Plaintiff's sole allegation is that the alleged assault prevented her from practicing her religion, presumably because she could not attend services since she made the accusation of assault against Defendant Melhorn, and Plaintiff has not alleged action against any Defendant that affected her ability to practice her religion. ECF No. 33 at 7-8, citing ECF No. 22 ¶ 126. Defendants also argue that she did not request any accommodation or that any of the Defendants prevented her from attending religious services. ECF No. 33 at 8. The Defendants do not challenge that, as alleged, Plaintiff's exercise of her religious beliefs are sincere.

However, it appears that Defendants misunderstand the nature of Plaintiff's RFRA claim. Indeed, Defendants did not file a reply brief. In her Response, Plaintiff notes that she has alleged the following actions by Melhorn: openly staring at Plaintiff from behind while singing religious hymns with her, ECF No. 22 at ¶¶ 52-53; handing Plaintiff Bible passages by placing them on her lap and then touching her inner thigh, id. at ¶ 54; stroking Plaintiff's hand when passing her a Bible, id. at ¶ 55; placing his hands on Plaintiff's head while purportedly praying for her and then running his hands down the sides and back of her body, id. at ¶ 60; and using the pretext of handing Plaintiff's religious pamphlets to enter her cell and sexually assault her, id. at ¶¶ 66-69. Plaintiff argues that "Congress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Hasbajrami, 2022 WL 4652337, at *8 (citing Holt v. Hobbs, 574 U.S. 352, 358 (2015)). Upon review, the Court concludes that, based on the allegations set forth in the Amended Complaint, Plaintiff should be permitted to pursue her RFRA claim and take discovery on these issues. While Plaintiff does not allege there was a direct command or impediment to Plaintiff such that she cease praying, a burden can be "substantial" even if it involves indirect coercion to betray one's religious beliefs. As alleged, Melhorn's indirect pressure and conduct placed on Plaintiff may very well have substantially

burdened her religious exercise; her allegations are sufficient to survive a motion to dismiss. Mack v. Warden Loretto FCI, 839 F.3d 286, 304 (3d Cir. 2016).

Accordingly, based on the arguments put forth by the parties, and upon a review of the allegations of the Amended Complaint, it is respectfully recommended that the Motion to Dismiss be denied as to Plaintiff's RFRA claim at Count XI.

**iv. Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)**

Next, the Court addresses the GEO Defendants' Motion to Strike headings C, D, E and F, in which they argue they should be stricken on the grounds they contain improper allegations that should be in paragraphs that can be admitted or denied, rather than placed where Defendants cannot respond in their responsive pleading. ECF No. 33 at 8. Plaintiff's headings subject to the motion are as follows:

> **C. MVPC Chaplain Mark Melhorn Engages in a Sustained and Escalating Pattern of Sexually Abusive Conduct Directed at Plaintiff Jane Doe**
>
> **D. MVPC's Sham PREA Investigation of Plaintiff's Allegations**
>
> **E. Melhorn is Permitted to Sexually Abuse Plaintiff Yet Again**
>
> **F. MVPC Conducts Another Sham PREA Investigation of Plaintiff's Allegations**

ECF No. 33 at 9, citing ECF No. 22 at 8, 12, 16 and 17 (bold in original). Defendants argue that headings C and E state criminal behavior, and are clearly scandalous. They are also somewhat repetitive as they echo allegations already made. ECF No. 33 at 9. Defendants contend that the subheading "Sham PREA Investigation" connotes suggests fraudulent conduct. In sum, Defendants argue that "these superfluous headings are scandalous, redundant, immaterial, and/or impertinent matter, and have no effect on the allegations in the Amended Complaint except to prejudice the Defendants, they should be stricken." ECF No. 33 at 10.

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Motions to strike are highly disfavored and where a defendant seeks to strike individual allegations from a complaint, the court will deny the motion "unless the moving party shows that 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." Eisai Co. v. Teva Pharms. USA, Inc., 629 F. Supp. 2d 416, 425 (D.N.J. 2009) (citations and internal quotation marks omitted). "When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." Id. (citations and internal quotation marks omitted). "Even when challenged materials meet the definitions in Rule 12(f), a motion will not be granted in the absence of clear prejudice to the adverse party." Jenkins v. Veney, No. CV 23-954, 2023 WL 4295824, at *1 (W.D. Pa. June 30, 2023).

Upon review of the entire Amended Complaint, the allegations are not scandalous and are not prejudicial to Defendants, and simply serve to organize the detailed allegations of the Amended Complaint consistent with the issues in the case. See Allyson Calloway v. Doe, Gateway Security Guard; Beth Doe, Gateway Security Guard; Gateway School District, Dr. William Short, James Nobel, Defendants, No. 2:25-CV-00682-NR-CBB, 2026 WL 2268184, at *9 (W.D. Pa. May 14, 2026), report and recommendation adopted sub nom. Calloway v. Doe, No. 2:25-CV-682, 2026 WL 2260738 (W.D. Pa. Aug. 5, 2026).

Accordingly, the Motion to Strike is without merit and it is respectfully recommended that the Motion to Strike be denied.

**v. Conclusion**

For all of these reasons, it is respectfully recommended that the Court deny the GEO Defendants' Motion to Dismiss, ECF No. 32 in its entirety.

**2. The Government's Motion to Dismiss — ECF No. 43**

Next, the Court addresses the Government's Motion to Dismiss the claims asserted against it. Plaintiff brings claims under the FTCA against the Government for negligence (Count I), ECF No. 22 ¶¶ 128-131, and negligent supervision (Count II), ECF No. 22 ¶ 132-135. In the Motion to Dismiss, the Government argues that: 1) the Court lacks subject matter jurisdiction pursuant to the independent contractor exception to the FTCA; 2) the Court lacks subject matter jurisdiction pursuant to the discretionary function exception to the FTCA; and 3) the Plaintiff has failed to state a claim upon which relief can be granted as to both negligence and negligent supervision. ECF No. 44 at 1.

**a. Sovereign Immunity and Subject Matter Jurisdiction**

First, the Government argues that it is a sovereign and has immunity from suit unless it expressly consents to suit, citing United States v. Testan, 424 U.S. 392, 399 (1976). ECF No. 44 at 4-5. As a sovereign, the United States is immune from suit unless it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). Its consent to be sued must be "unequivocally expressed," and the terms of such consent define the court's subject matter jurisdiction. Id. (quotations omitted). The FTCA operates as a limited waiver of the United States' sovereign immunity. See Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003).

But the waiver does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an

employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997). If a plaintiff's claim falls within this "discretionary function" exception, the Court lacks subject matter jurisdiction to hear it. See Baer v. United States, 722 F.3d 168, 172 (3d Cir. 2013). Plaintiff must establish the United States' waiver of sovereign immunity, and the United States must prove the discretionary function exception applies. S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 333 (3d Cir. 2012).

Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and "render[ed]" itself liable. Richards v. United States, 369 U.S. 1, 6 (1962). This category includes claims that are:

> "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission **of any employee of the Government** [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

F.D.I.C. v. Meyer, 510 U.S. 471, 477 (1994) (emphasis added).

In the Amended Complaint, Plaintiff alleges "GEO operated MVPC and employed and/or contracted with defendants Melhorn and Koegler" and "[a]t all times relevant to this Complaint, defendants Melhorn and Koegler were acting within the scope and course of their employment/contracting/volunteering arrangement with GEO." ECF No. 22 ¶¶ 17-20. Plaintiff alleges that ICE directives, including the Performance-Based National Detention Standards 2011 ("PBNDS 2011") "impose on contractors and detention facilities, like GEO and MVPC, certain requirements regarding responses to and ensure the proper investigation of allegations of sexual abuse." Id. ¶¶ 29-30.

Here, the Government argues it cannot be held liable for the negligent acts of contractors, insofar as a critical feature of the FTCA is that the United States has only waived sovereign

immunity for certain torts committed by its employees in the scope of their employment. ECF No. 44 at 7, citing Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997). Pursuant to the terms of the IGSA with Clearfield County at MVPC, Clearfield County agreed to provide personnel, and agreed it would be liable for negligence of its officers and employees, not the Government. ECF No. 44-1 at 5, 8. Clearfield County entered into the Service Contract with GEO for the management and operation of MVPC and to perform all duties under the IGSA and agreed to hold harmless ICE for any negligence of GEO employees. ECF No. 44-2 at 1, 5. Under the terms of the agreements, GEO Services wholly is responsible for the safety and well-being of the detainees at MVCP. See ECF No. 44-1 (incorporating IGSA, PBNDS, QASP; PREA) and ECF No. 44-2 at Art. 5 (PBNDS and Other Applicable Standards).

Nevertheless, Plaintiff has alleged that ICE has breached its duty to protect detainees from a known sexual predator and failed to meet its regulatory duties, and that this is the basis of her negligence and negligent supervision claims against the Government — not GEO's and its employee's conduct, against whom Plaintiff has brought separate negligence claims. Accordingly, the Court must address the discretionary function exception.

**b. Discretionary Function Exception**

Next, the Government argues that the discretionary function exception precludes the Court's subject matter jurisdiction. ECF No. 44 at 13-14, citing, *inter alia*, 28 U.S.C. § 2680(a); Dalehite v. United States, 346 U.S. 15, 33-34 (1953) and United States v. Gaubert, 499 U.S. 315, 323 (1990). The government has the burden to show that the exception applies. Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008). The initial task is to identify the governmental conduct being challenged. S.R.P., 676 F.3d at 332. To determine whether the discretionary function exception to the waiver of immunity applies, a court must assess (1) whether the act involves an

"element of judgment or choice," rather than a course of action prescribed by a federal statute, regulation, or policy; and (2) even if the challenged conduct involves an element of judgment, "whether that judgment is of the kind that the discretionary function exception was designed to shield." Mitchell v. United States, 225 F.3d 361, 363-64 (3d Cir. 2000) (quoting Gaubert, 499 U.S. 322-23).

The Government contends that the conduct being challenged is federal contracting decisions, which it argues are discretionary functions, *i.e.,* when a federal agency such as ICE chooses to contract safety responsibilities to a third party, the decision is protected by the discretionary function exception. ECF No. 44 at 15-16. According to the Government, the specific acts/omissions Plaintiff attributes to ICE's alleged negligence, all flow from GEO's implementation of (or failure to implement) regulations and directives to safeguard detainees. The safety and security of detainees was required of GEO per the IGSA as incorporated into Clearfield County's Services Contract with GEO. ECF No. 51 at 3. As the Government sees it, as alleged, PREA guidelines and decisions concerning safety, security, hiring, training, and supervision constitute discretionary functions, and decisions about how to supervise a contractor are discretionary decisions unless the law or contract specifies otherwise. Thus, the first step of Gaubert is met. As to the second Gaubert step, the Government contends that how to best protect an inmate is the type of discretionary power that the DFE was designed to shield. Donaldson v. United States, 281 Fed. App'x 75, 77-78 (3d Cir. 2008).

In her response, Plaintiff argues that the discretionary function exception does not apply to her negligence claim, because it is ICE's breach of its mandatory duties under the law and under that contract to oversee, supervise, and guarantee Plaintiff's safety and security at MVPC which forms the basis for Plaintiff's negligence claim. ECF No. 50 at 9. She argues that the basis of her

negligence claim is "ICE's breach of its duty to respond to and remedy the pattern of sexual abuse of women detained at MVPC, to address known surveillance camera blind spots, to provide specialized staff training regarding investigation of sexual abuse allegations, and to ensure provision of information regarding U nonimmigrant status. ECF No. 22 at ¶¶ 128-131." ECF No. 50 at 9. Given the host of regulations that ICE must follow and protocols that must be established, described supra as alleged in the Amended Complaint, discretionary function exception does not apply, according to Plaintiff, because "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes." Id. at 10, citing, *inter alia*, U.S. Fid. & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir. 1988). Thus, Plaintiff posits, the first step of Gaubert is not met, and the analysis can stop there. Should the Court proceed to step two, however, the discretionary function exception only shields conduct from accountability if it is based on considerations of public policy. As applied in this instance, Plaintiff argues, the second step of Gaubert fails because there would be no legitimate policy consideration to fail to act to prevent sexual abuse, investigate it when it occurs, and provide information to victims. ECF No. 50 at 14-15. At this juncture, and upon review, the Court agrees with Plaintiff's argument and holds that the discretionary function exception does not preclude subject matter jurisdiction.

Plaintiff next argues that the discretionary function exception also does not apply to Plaintiff's negligent supervision claim for the same reasons it does not apply to her negligence claims. Id. at 15. Plaintiff's negligent supervision claim alleges that ICE and its employees breached their duty to ensure MVPC staff protected detained persons from sexual abuse and knew that the incompetence/unfitness of MVPC staff was reasonably likely to lead to risk of harm to Plaintiff. ECF No. 22 at ¶¶ 132-135. She argues that ICE's obligations to oversee and supervise Clearfield County and GEO's work when it knew or should have known that MVPC staff were

unfit or not competent to protect Plaintiff from sexual abuse had no element of discretion or choice (Gaubert step one) and further, protecting immigration detainees from sexual abuse while in immigration custody does not involve the weighing of policy considerations given the mandatory directives in the circumstances of this case. (Gaubert step two). ECF No 50 at 16. Lins v. United States, 847 F. App'x 159, 165 (4th Cir. 2021). Again, the Plaintiff's argument is sound, and the Court concludes, at this initial stage of the proceedings, that the discretionary function exception does not bar subject matter jurisdiction over Plaintiff's negligent supervision claim.

**c. Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)**

Next, Government moves to dismiss Counts I and II (negligence and negligent supervision, respectively) on the grounds Plaintiff has failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). To establish a prima facie negligence claim under Pennsylvania law, the plaintiff must plausibly show (1) a duty requiring the defendant to abide by a standard of care to protect others against unreasonable risks, (2) the defendant failed to conform to that standard, (3) a causal connection between the defendant's conduct and the resulting harm and (4) the plaintiff suffered actual damage or loss. Dragone v. Pew, 621 F. Supp. 3d 561, 565 (E.D. Pa. 2022). The standard of care is ordinary care a "reasonably prudent person" would observe in similar circumstances. Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009).

Likewise, a negligent supervision claim "applie[s] ordinary negligence principles" and "impose on an employer the duty to exercise reasonable care in selecting, supervising and controlling employees." Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 42 (Pa. Super. 2000). An employer is liable for negligent supervision when it negligently supervises an activity, employs an improper person in work that risks harm to others or permits an employee to commit tortious conduct using instrumentalities in the employer's control. Id. In Althaus ex rel. Althaus

v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000), the Pennsylvania Supreme Court held that determining duty in negligence cases involves weighing: (1) the relationship between parties, (2) the social utility of the actor's conduct, (3) the nature of the risk and foreseeability of harm, (4) the consequences of imposing a duty, and (5) the overall public interest.

The Government argues that Plaintiff has failed to state a claim because Plaintiff cannot baldly claim that the United States had a duty of care or breached said duty of care; she must sufficiently plead it rather than plead a legal conclusion couched as a factual allegation. See ECF No. 22 ¶ 16 (claiming "Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act"). ECF No. 44 at 25. The Court disagrees.

After reviewing the contractual relationship between Clearfield County, GEO, and ICE, and accepting as true all material allegations in the Amended Complaint and viewing all reasonable factual inferences in the light most favorable to the Plaintiff, Plaintiff has sufficiently alleged that ICE had a duty to ensure that its employees protected Plaintiff from sexual abuse through compliance with the regulatory requirements of the PREA and PBNDS standards and its policies and that it breached that duty. ECF 22 ¶¶ 31-40, 121-122.

#### d. Conclusion

For all of these reasons, it is respectfully recommended that the Government's Motion to Dismiss, ECF No. 43, be denied.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss and Motion to Strike filed on behalf of Defendants GEO Secure Services, LLC, Mark Melhorn and M. Koegler, ECF No. 32, be DENIED. It is further respectfully recommended that the United States' Motion to Dismiss, ECF No. 43, be DENIED.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

Maureen P. Kelly

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: August 24, 2026

cc: The Honorable Stephanie L. Haines
United States District Judge

All counsel of record by Notice of Electronic Filing